KEN NAGY (I.S.B. No. 6176)
ATTORNEY AT LAW
P.O. Box 164
Lewiston, Idaho 83501
Telephone: (208) 301-0126
Facsimile: (888) 291-3832
E-mail: knagy@lewiston.com

ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> EDGECREEK LLC, ALL STUDIO APARTMENTS LLC, MOUNTAIN PINES ID LLC, CHRISTOPHER CARR, CENTRAL PARK APARTMENTS, HERITAGE BYU IDAHO APPROVED HOUSING, ALISHA (Last Name Currently Unknown), ADELE PINVISES, and NATALIE HALLE, <br><br> Defendants. | CASE NO. __CV19-163__ <br><br> VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL |

COMES NOW the Plaintiff Intermountain Fair Housing Council, Inc. and for a cause of action against the Defendants Edgecreek LLC, All Studio Apartments LLC, Mountain Pines ID LLC, Christopher Carr, Central Park Apartments, Heritage BYU Idaho Approved Housing, Alisha (Last Name Currently Unknown), Adele Pinvises, and Natalie Halle, states and alleges as follows:

VERIFIED COMPLAINT AND                    1
DEMAND FOR JURY TRIAL

<u>NATURE OF THE ACTION</u>

1. This is an action brought by the above-named Plaintiff for declaratory judgment, permanent injunctive relief, and damages on the following bases:

    a. <u>Fair Housing Act,</u> 42 U.S.C. §3601 et seq. (hereinafter "FHA"), and in particular:

        i.  Discrimination in the sale or rental, or otherwise made unavailable, a dwelling because of "handicap", "familial status" and "religion", 42 U.S.C. §3604;

        ii.  Discriminatory terms, conditions or privileges in the sale or rental of a dwelling because of "handicap", "familial status" and "religion", 42 U.S.C. §3604;

        iii.  Refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling, 42 U.S.C. §3604(f);

        iv.  Making, printing or publishing a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap", "familial status" and "religion", 42 U.S.C. §3604(c); and

        v. Interference, coercion or intimidation, 42 U.S.C. §3617.

b. <u>Fair Housing Regulations,</u> 24 C.F.R. §100 et seq.

c. <u>Negligence.</u>

<u>JURISDICTION AND VENUE</u>

2. This Court has jurisdiction over this action pursuant to 42 U.S.C. §3613 and 28 U.S.C. §§1331, 1332, 1337, 1343, 1367 and 2201.  The amount in controversy exceeds $75,000 exclusive of interests and costs.  Venue is proper in this District in that the claims alleged herein arose in the City of Rexburg, County of Madison, State of Idaho.

<u>PARTIES</u>

3.  The Plaintiff Intermountain Fair Housing Council, Inc. (hereinafter "the Plaintiff" or "IFHC") is a private, nonprofit organization organized under the laws of the State of Idaho with its principal place of business at 4696 West Overland Road, Suite 140, Boise, Idaho 83705.  Its mission is to ensure open and inclusive housing for all people, and to advance equal access to housing for all persons without regard to race, color, sex, religion, national origin, familial status, sexual orientation, gender identity, source of income, or disability (the term "handicap", as that term is used and defined in the FHA, is used herein interchangeably with the term "disability"). The Plaintiff attempts to eradicate discrimination based on disability through, among other things, education on the fair housing laws, housing information and referrals, housing counseling, and assistance with mediating and or filing complaints.  The Plaintiff also provides education and outreach on fair housing laws and practices to housing consumers, providers, and others.

4.  The Defendant Edgecreek LLC (hereinafter "Defendant Edgecreek") is a limited liability company doing business in the State of Idaho and is located at 5132 North 300 West, Suite 100, Provo, Utah 84604.  Said Defendant is the property management company with regards to Defendant Central Park Apartments and Defendant Heritage BYU Idaho Approved Housing.

5.  The Defendant All Studio Apartments LLC (hereinafter "Defendant All Studio") is a limited liability company doing business in the State of Idaho and is located at 5132 North 300 West, Suite 100, Provo, Utah 84604.  Said Defendant is the owner of record of Defendant Central Park Apartments, as indicated by the public records of the Madison County, Idaho Assessor's Office.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

3

6.   The Defendant Mountain Pines ID LLC (hereinafter "Defendant Mountain Pines") is a limited liability company doing business in the State of Idaho and is located at 5132 North 300 West, Suite 100, Provo, Utah 84604.  Said Defendant is the owner of record of Defendant Heritage BYU Idaho Approved Housing, as indicated by the public records of the Madison County, Idaho Assessor's Office.

7.   The Defendant Christopher Carr (hereinafter "Defendant Carr") is the President and employee of Edgecreek, and has acted as a property manager with regards to Defendant Central Park Apartments and Defendant Heritage BYU Idaho Approved Housing.

8.   The Defendant Central Park Apartments (hereinafter "Defendant Central Park") is an unincorporated entity doing business in the State of Idaho as a multi-family apartment complex located at 450 West 4th Street, Rexburg, Idaho 83440.  Defendant Central Park is a covered dwelling subject to the requirements of the FHA, as provided by 42 U.S.C. §3603.

9.   The Defendant Heritage BYU Idaho Approved Housing (hereinafter "Defendant Heritage") is an unincorporated entity doing business in the State of Idaho as a multi-family apartment complex located at 129 West 4th Street, Rexburg, Idaho 83440.  Defendant Heritage is a covered dwelling subject to the requirements of the FHA, as provided by 42 U.S.C. §3603.

10.   The Defendant Alisha (Last Name Currently Unknown) (hereinafter "Defendant Alisha") is an employee of Defendant Edgecreek, and has acted as a property manager with regards to Defendant Central Park and Defendant Heritage.

11.   The Defendant Adele Pinvises (hereinafter "Defendant Pinvises") is employed as a property manager by Defendants, and has acted as a property manager with regards to Defendant Central Park.

VERIFIED COMPLAINT AND                     4
DEMAND FOR JURY TRIAL
                                                                        **KEN NAGY**
                                                                     **Attorney at Law**
                                                                      **Lewiston, Idaho**

12.  The Defendant Natalie Halle (hereinafter "Defendant Halle") is employed as the Assistant Manager by Defendants, and has acted as a property manager with regards to Defendant Heritage.

<u>STANDING OF PLAINTIFF</u>

13.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-12 above.

14.  The Plaintiff has suffered damages as the result of the Defendants' actions and omissions, including the diversion of the Plaintiff's past and future resources, lost economic opportunity, and the frustration of the Plaintiff's mission.

15.  The Plaintiff's mission, as described above, has been frustrated by the Defendants' practices because the Defendants' violations of the FHA communicate to housing consumers and housing providers that discriminatory practices are permissible and that correctional remedies are not available, thereby hampering Plaintiff's efforts to educate the public on fair housing issues and to advance equal access to housing.  The Plaintiff's mission has further been frustrated as the Defendants' violations of the FHA have reduced the pool of non-discriminatory rental housing available to tenants in the State of Idaho.

16.  In order to counteract the frustration of the Plaintiff's mission, the Plaintiff has had to devote significant resources to identify, investigate, document and take action to correct the Defendants' violations of the FHA, including but not limited to the incursion of litigation expenses.  As a result, the Plaintiff has actually diverted resources from other fair housing-related activities, including fair housing education and enforcement activities throughout the State of Idaho and the surrounding region.  Furthermore, the Plaintiff will necessarily incur additional expenses in the future to counteract the lingering effects of the Defendants' violations

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

5

of the FHA through the monitoring of the Defendants' activities, publication and advertising costs, and the sponsorship of educational activities.

17.  As a direct result of the Defendants' actions and omissions as described below, the Plaintiff is an "aggrieved person", as that term is defined by the FHA.  42 U.S.C. §3601(i).  The Plaintiff has suffered and continues to suffer significant and irreparable loss and injury, and has sufficient standing to bring this action before this Court.

<u>VIOLATIONS CONCERNING CENTRAL PARK APARTMENTS</u>

18.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-17 above.

19.  The Defendants have engaged in a long-term pattern of discrimination in violation of the FHA with regards to their ownership, operation and management of Defendant Central Park.

20.  The Plaintiff conducted a first test of the Defendants on or about the 3rd day of April, 2013 regarding the Central Park Apartments.  In applying for an apartment, the Plaintiff's first tester told the Defendant Alisha that the tester has a service animal prescribed by her doctor for her disability.  The Defendant Alisha told the Plaintiff's first tester that the tester must contact the owner regarding a service animal and that it would take approximately four weeks to get approval for the service animal.

21.  The procedure for requesting a reasonable accommodation for a service animal imposed upon the Plaintiff's first tester constitutes an inordinate and unreasonable delay in the processing of a reasonable accommodation request in violation of the FHA.

22.  The Plaintiff conducted a second test of the Defendants on or about the 29th day of July, 2014 regarding the Central Park Apartments.  In applying for an apartment, the Plaintiff's second tester told the Defendants' staff that the tester has a service animal prescribed by her

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

6

doctor for her disability.  The Defendants' staff told the Plaintiff's second tester that the tester must contact the owner regarding a service animal and provided the tester with contact information for the Defendant Carr.

23.  The Plaintiff's second tester contacted the Defendant Carr to discuss the tester's reasonable accommodation request and the Defendant Carr told the tester that she must complete and submit an Assistance Animal Requests form in order to apply to have a service animal.  The Assistance Animal Requests form that the Defendant Carr provided to the Plaintiff's second tester required the tester to disclose information regarding the nature and severity of the tester's disability, and required the disclosure of additional information that is burdensome and not required when considering a reasonable accommodation request.  Furthermore, the Defendant Carr imposed upon the Plaintiff's second tester the provision that the tester provide an "[a]uthorization from all roommates accepting that the animal will not be a burden on their rights [and that] [a]uthorization letters must come separately from the individual's request [sic] and must come directly from each roommate."

24.  The Defendant Carr also provided to the Plaintiff's second tester written rules regarding service animals which are overly-burdensome, overly-broad in application, are coercive in effect, and interfere with the reasonable accommodation process, including but not limited to undermining the requirement that parties enter into an interactive dialogue regarding a reasonable accommodation request.  The Rules for Tenant's Assistance Animals provided by the Defendant Carr to the Plaintiff's second tester prohibit tenants from leaving a service animal unattended for more than thirty minutes at a time and require that the animal be physically held or on a leash while on the property.  Furthermore, those rules expressly provide that "[m]anagement will make an effort to find out the allergies of tenants in surrounding units.  If

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL                          7

allergies are found, whether before or after the animal arrives, the animal will lose its approval and must be immediately removed from the property." The Defendant Carr told the Plaintiff's second tester that in the event that the tester's reasonable accommodation request is granted, the tester will be required to comply with those written rules.

25. The Defendant Carr's requirement that the Assistance Animal Requests form be completed and submitted when applying for a reasonable accommodation and the imposition of overly-burdensome rules and training requirements pertaining to service animals constitute violations the FHA.

26. The Plaintiff conducted a third test of the Defendants on or about the 27th day of October, 2014 regarding the Central Park Apartments. In applying for an apartment, the Plaintiff's third tester told the Defendant Carr that the tester has a service animal prescribed by her doctor for her disability. The Defendant Carr told the Plaintiff's third tester that in order to process the tester's reasonable accommodation request, she must provide detailed information concerning the tester's reasonable accommodation request which was onerous and inquired into the nature and severity of the tester's disability. Furthermore, the Defendant Carr also imposed upon the Plaintiff's third tester the provision that the tester provide an "[a]uthorization from all roommates accepting that the animal will not be a burden on their rights [and that] [a]uthorization letters must come separately from the individual's request [sic] and must come directly from each roommate."

27. The Defendant Carr also provided to the Plaintiff's third tester written rules regarding service animals which are overly-burdensome, overly-broad in application, are coercive in effect, and interfere with the reasonable accommodation process, including but not limited to undermining the requirement that parties enter into an interactive dialogue regarding a

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

8

reasonable accommodation request.  The Rules for Tenant's Assistance Animals provided by the Defendant Carr to the Plaintiff's third tester prohibit tenants from leaving a service animal unattended for more than thirty minutes at a time and require that the animal be physically held or on a leash while on the property.  Furthermore, those rules expressly provide that "[m]anagement will make an effort to find out the allergies of tenants in surrounding units.  If allergies are found, whether before or after the animal arrives, the animal will lose its approval and must be immediately removed from the property."  The Defendant Carr told the Plaintiff's third tester that in the event that the tester's reasonable accommodation request is granted, the tester will be required to comply with those written rules.

28.  The Plaintiff's tester told the Defendant Carr that she did not know if her doctor would be willing to release all of the information that the Defendant Carr was requiring the tester to provide and asked the Defendant Carr if he would waive that requirement.  The Defendant Carr told the Plaintiff's tester that he cannot process the tester's request for a reasonable accommodation without the detailed information that he required the tester to provide.

29.  The Defendant Carr's requirement that the Plaintiff's third tester provide detailed information concerning the nature and severity of the tester's disability, the imposition of training requirements pertaining to service animals, and the imposition of rules regarding service animals that are overly-burdensome, overly-broad in application, coercive in effect, and which interfere with the reasonable accommodation process constitute violations the FHA.

30.  April Allred and Cory Allred (hereinafter "Allreds") rented an apartment located at the Defendant Central Park beginning the 10th day of April, 2017.  April Allred is handicapped, as that term is defined by the FHA, and requires the use of an emotional support animal as a service animal.

VERIFIED COMPLAINT AND                                   9
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

31.  On the 10th day of April, 2017, the Allreds submitted a reasonable accommodation request to the Defendants for April Allred to have a service animal.  In response, the Defendants required April Allred to complete and submit an Assistance Animal Requests form in order to apply to have a service animal.  The Assistance Animal Requests form required April Allred to disclose information regarding the nature and severity of her disability, and required the disclosure of additional information that is burdensome and not required when considering a reasonable accommodation request.

32.  In addition, the Defendants imposed upon April Allred written rules regarding service animals which are overly-burdensome, overly-broad in application, are coercive in effect, and interfere with the reasonable accommodation process, including but not limited to undermining the requirement that parties enter into an interactive dialogue regarding a reasonable accommodation request.  The Rules for Tenant's Assistance Animals provided by the Defendant Carr to the Allreds prohibited them from leaving a service animal unattended for more than thirty minutes at a time, required that the animal be physically held or on a leash while on the property, and required the service animal to comply with certain training requirements.  Furthermore, those rules expressly provide that "[m]anagement will make an effort to find out the allergies of tenants in surrounding units.  If allergies are found, whether before or after the animal arrives, the animal will lose its approval and must be immediately removed from the property."

33.  On the 10th day of April, 2017, the Allreds completed the Assistance Animal Requests form and submitted it to the Defendant Carr.

VERIFIED COMPLAINT AND              10
DEMAND FOR JURY TRIAL
                                                                    **KEN NAGY**
                                                                    **Attorney at Law**
                                                                    **Lewiston, Idaho**

34.  On the 14th day of April, 2017, the Defendant requested additional information from the Allreds regarding the service animal that they were requesting and the Allreds provided that additional information to the Defendant Carr that same day.

35.  As the Defendants had not yet approved the Allred's reasonable accommodation request, they did not bring April Allred's service animal to live with them in their apartment at the Central Park Apartments and instead kept the animal housed off of the property, which negatively impacted April Allred's disability.

36.  On the 19th day of April, 2017, the Defendants had not yet responded to the Allred's reasonable accommodation request.  That day, April Allred briefly parked her car at the Central Park Apartments with her service animal in the car.  The Defendant Carr contacted the Allreds and told them that dogs are not allowed at the Central Park Apartments.  April Allred reminded the Defendant Carr that she has submitted a reasonable accommodation request for the service animal and that she had not yet received the Defendants' response to her request.  Later that day, the Defendant Carr contacted the Allreds and told them that their reasonable accommodation request is approved provided that they comply with the animal rules that were previously provided to them.  The Defendant Carr further told the Allreds that "violation of [the animal rules] will lead to immediate eviction.  This is your only notice."

37.  On the 26th day of April, 2017, the Defendant Carr contacted the Allreds and told them that April Allred's service animal must be removed from the Central Park Apartments for the reason that the service animal was allegedly barking.  The Defendant Carr provided no details to the Allreds concerning the allegation that the service animal was barking.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

11

38.  On the 27th day of April, 2017, the Allreds removed April Allred's service animal from the Central Park Apartments.  As a result, the symptoms of April Allred's disability severely worsened.

39.  On the 5th day of July, 2017, the Allred's contacted the Defendant Carr and requested that he reconsider his requirement to remove April Allred's service animal from the Central Park Apartments so that the dog could live with them until they moved out of the property at the end of their lease term on the 31st day of July, 2017.  The Defendant Carr refused to rescind his requirement that April Allred's service animal be removed from the property.

40.  The Allreds moved out of the Central Park Apartments early so that April Allred could have her service animal with her.

41.  The following actions of the Defendants constitute violations of the FHA: (a) mandating that the Defendants' Assistance Animal Requests form be completed and submitted by the Allreds when applying for a reasonable accommodation; (b) the imposition of service animal rules upon the Allreds which are overly-burdensome, overly-broad in application, coercive in effect, and which interfere with the reasonable accommodation process; (c) the imposition of training requirements pertaining to service animals upon the Allreds; (d) inordinate and unreasonable delay in approving April Allred's reasonable accommodation request; (e) the Defendant Carr's threat of immediate eviction for any violations of the Defendants' animal rules; and (f) the Defendant Carr's requirement that April Allred's service animal be removed from the Central Park Apartments.

42.  The Plaintiff conducted a fourth test of the Defendants on the 14th day of June, 2017 regarding the Central Park Apartments.  In applying for an apartment, the Plaintiff's fourth tester told the Defendants' staff that the tester has a service animal prescribed by her doctor for her

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL                    12

disability.  The Defendants' staff told the Plaintiff's fourth tester that it is a two-week process to get a service animal approved, that the tester must contact the owner regarding a service animal and provided the tester with contact information for the Defendant Carr.

43.  The Plaintiff's fourth tester sent a written reasonable accommodation request to the Defendant Carr to discuss the matter and the Defendant Carr told the tester that she must complete and submit an Assistance Animal Requests form in order to apply to have a service animal.  The Assistance Animal Requests form that the Defendant Carr provided to the Plaintiff's fourth tester required the tester to disclose information regarding the nature and severity of the tester's disability, and required the disclosure of additional information that is burdensome and not required when considering a reasonable accommodation request.  The Defendant Carr also provided to the Plaintiff's fourth tester written rules regarding service animals which are overly-burdensome, overly-broad in application, are coercive in effect, and interfere with the reasonable accommodation process, including but not limited to undermining the requirement that parties enter into an interactive dialogue regarding a reasonable accommodation request.  The Rules for Tenant's Assistance Animals provided by the Defendant Carr to the Plaintiff's fourth tester prohibit tenants from leaving a service animal unattended for more than thirty minutes at a time and require that the animal be physically held or on a leash while on the property.  Furthermore, those rules expressly provide that "[m]anagement will make an effort to find out the allergies of tenants in surrounding units.  If allergies are found, whether before or after the animal arrives, the animal will lose its approval and must be immediately removed from the property."  The Defendant Carr told the Plaintiff's fourth tester that in the event that the tester's reasonable accommodation request is granted, the tester will be required to comply with those written rules.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

13

44.  The Defendant Carr's requirement that the Assistance Animal Requests form be completed and submitted when applying for a reasonable accommodation, the inordinate and unreasonable delay in responding to reasonable accommodation requests, and the imposition of rules regarding service animals that are overly-burdensome, overly-broad in application, coercive in effect, and which interfere with the reasonable accommodation process constitute violations the FHA.

45.  On or about the 15th day of August, 2017, the Plaintiff received a complaint from a tenant residing at the Central Park Apartments.  That tenant, who is disabled as the result of a severe sight impairment, uses a seeing-eye dog as her service animal.  That tenant complained that when she submitted a request for a reasonable accommodation to the Defendants to have her service animal, the Defendant Carr required her to provide proof of her disability, despite that she has an obvious disability, and required her to provide training credentials for her seeing-eye dog.  That tenant further complained that the Defendant Carr interfered with her full use of the common areas of the property after he approved of her service animal by expressly forbidding the tenant from taking her service animal to the pool.  That tenant stated that she moved out of the Central Park Apartments due to the Defendant Carr's discriminatory conduct.  Such actions constitute violations of the FHA.

46.  Trevor Cook and Emily Cook (hereinafter "Cooks") rented an apartment located at the Defendant Central Park.  Emily Cook is handicapped, as that term is defined by the FHA, and requires the use of an emotional support animal as a service animal.  The Defendants' lease with the Cooks provides that if the Cooks file a complaint against the Defendants with a state or federal agency and the agency fails to make a finding against the Defendants, the Cooks will be

liable to the Defendants for their attorney's fees or costs and damages for their time. This lease provision constitutes interference, coercion or intimidation in violation of the FHA.

47. On or about the 10th day of June, 2018, the Cooks submitted to the Defendant Carr a reasonable accommodation request for a service animal. The Defendant Carr required that he personally evaluate the Cook's service animal to determine if it is suitable as a service animal by meeting his training requirements. After meeting with the Cook's service animal, the Defendant Carr told the Cooks that the service animal does not meet his training requirements and he denied the Cook's reasonable accommodation request. The Defendant Carr threatened the Cooks with eviction if they did not remove the service animal from the premises and began charging the Cooks a $50.00 per day charge for having the service animal.

48. On or about the 16th day of July, 2018, the Cooks received a bill from the Defendant Carr for the amount of $900.00 for the fee that the Defendant Carr imposed upon the Cook's service animal.

49. The Defendant Carr's imposition of training requirements, denial of the Cook's reasonable accommodation request and imposition of a fee on the Cook's service animal constitute violations of the FHA.

50. The Plaintiff has received complaints submitted by the Allreds, the Cooks and other tenants of the Defendants regarding the above-described actions of the Defendants. The Plaintiff has counseled the Allreds, the Cooks and other tenants of the Defendants regarding their fair housing rights and has committed significant resources to investigating the actions of the Defendants, which constitutes a diversion of the Plaintiff's resources. The discriminatory actions of the Defendants have resulted in a frustration of the Plaintiff's mission. The Plaintiff has therefore been damaged by the discriminatory actions of the Defendants.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

15

51.  On or about the 6th day of February, 2019, an investigator for the Plaintiff viewed information on the Defendants' websites maintained by the Defendants for the Central Park Apartments which indicated that the Defendants might be engaging in discrimination on the basis of familial status in violation of the FHA with regards to said real property.  The website maintained by the Defendants with regards to Central Park Apartments specifies that beyond two tenants, there is an additional $50.00 per month charge for each additional person.  As a result, the Plaintiff conducted additional testing of the Defendants on the basis of familial status.

52.  The Plaintiff conducted a test of the Defendants on or about the 7th day of February, 2019 through on or about the 11th day of February, 2019 with regards to Central Park Apartments.  In applying for an apartment, the Plaintiff's tester told the Defendant Pinvises that the tester is seeking an apartment for two adults and their six month old child.  The Defendant Pinvises told the Plaintiff's tester that the rent on the apartment is $625.00 per month for the two adults and that the Defendants will charge an additional $50.00 rent per month for the tester's child.  Such conduct constitutes familial status discrimination in violation of the FHA.

53.  As a result of the violations of the FHA described above concerning the Central Park Apartments and the damages that the Plaintiff has incurred as the direct result of the Defendants' actions in violation of the FHA, the Plaintiff has filed multiple administrative complaints with the United States Department of Housing and Urban Development (hereinafter "HUD") on its own behalf and has assisted the Allreds and the Cooks in filing such complaints with HUD.

## VIOLATIONS CONCERNING HERITAGE BYU IDAHO APPROVED HOUSING

54.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-53 above.

VERIFIED COMPLAINT AND                        16
DEMAND FOR JURY TRIAL
                                                                 KEN NAGY
                                                              Attorney at Law
                                                              Lewiston, Idaho

55.  On or about the 9th day of May, 2016, the Plaintiff received a complaint from a tenant residing at the Heritage BYU Idaho Approved Housing regarding the Defendants' actions pertaining to his reasonable accommodation request to have service animals.  The tenant is handicapped, as that term is defined by the FHA, and requires the assistance of service animals.

56.  The tenant complained to the Plaintiff that in or about February 2016, he had submitted a reasonable accommodation request to the Defendants to have two tortoises as emotional support animals, which had been prescribed by his therapist.  The tenant stated that the Defendant Carr denied the tenant's reasonable accommodation request for the reasons that: (a) the tenant's proof of need was inadequate; (b) the tenant lacked an enclosure for the service animals; (c) there was no way to verify that the service animals would not be left unattended for more than thirty minutes at a time; (d) the tenant's reasonable accommodation request had not been authorized by the tenant's roommate; (e) the tenant had not provide a veterinarian certification; and (f) the tenant's reasonable accommodation request to have two service animals exceeds the Defendants' limitation of one service animal per tenant.

57.  In or about April 2016, the Defendant Carr requested from the tenant further information regarding the tenant's reasonable accommodation request, including: (a) information regarding the nature or severity of the tenant's disability; (b) authorization by the tenant's roommate for the tenant to have the service animals; (c) compliance with the rule that service animals may not be left unattended for more than thirty minutes at a time; (d) certification from a veterinarian; and (e) licensing by the City of Rexburg.

58.  In addition, the Defendant Carr has engaged in intimidating conduct towards the tenant's health care provider, who rescinded his prescription for service animals as a result of such conduct.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

17

59.  On or about the 8th day of April, 2016, the tenant provided additional information to the Defendant as requested and constructed an enclosure for the service animals, which included the installation of web cameras to enable the tenant to monitor the service animals while away from home.

60.  On the 16th day of June, 2016, the Defendant Carr informed the tenant that the enclosure that the tenant constructed: (a) violates the Defendants' prohibition on outside furniture; (b) violates the "no glass furniture" policy that the Defendants are going to implement because the enclosure has a glass top; (c) was constructed with some wood components, which could break, smell, or cause damage to the apartment.

61.  Additionally, the Defendant Carr informed the tenant that the web cameras used for monitoring the service animals did not satisfy the requirement that service animals not be left unattended for more than thirty minutes at a time.  The Defendant Carr has falsely and repeatedly told the tenant that this policy is required to the rules of Brigham Young University-Idaho housing handbook.  That handbook does not contain any such requirement.

62.  As a result of the complaint submitted by the tenant to the Plaintiff on or about the 9th day of May, 2016, the Plaintiff has engaged in counseling of the tenant regarding his fair housing rights and has attempted to enter into an interactive dialogue with the Defendants to resolve the Defendants' violations of the FHA.  The Plaintiff mailed a lengthy and detailed advisory letter to the Defendant Carr dated the 11th day of July, 2016 which provided numerous legal citations that indicate that the Defendants' service animal policies at Heritage BYU Idaho Approved Housing violate the FHA, and stating that if the Defendants do not bring such policies into compliance with the FHA, the Plaintiff will file a complaint against the Defendants with HUD.  However, the Defendants have failed or refused to maintain or enter an interactive

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

18

dialogue with the Plaintiff, and have failed or refused to bring their service animal policies into compliance with the FHA.

63.   The following actions of the Defendants constitute violations of the FHA: (a) inquiry into the nature of severity of the tenant's disability when applying for a reasonable accommodation; (b) the imposition of overly-burdensome rules pertaining to service animals upon the tenant; (c) inordinate and unreasonable delay in approving the tenant's reasonable accommodation request; (d) the Defendants' failure or refusal to maintain or enter into an interactive dialogue with the Plaintiff regarding the tenant's reasonable accommodation request; (e) the Defendant Carr's provision of false information to the tenant regarding the source of the animal rules imposed by the Defendants; and (f) the Defendant Carr's intimidation of the tenant's health care provider.

64.   On or about the 6th day of February, 2019, an investigator for the Plaintiff viewed information on the Defendants' websites maintained by the Defendants with regards to Heritage BYU Idaho Approved Housing which indicated that the Defendants might be engaging in discrimination on the basis of familial status and religion in violation of the FHA with regards to said real property.  The website maintained by the Defendants with regards to Heritage BYU Idaho Approved Housing specifies that said real property "embraces the Student Living program with enthusiasm."  Said website further prominently provides "Ward Information" featuring a photograph of a plaque for "The Church of Jesus Christ of Latter-Day Saints", and states "To find out which Ward & Stake you are a part of visit the Campus Wards and Stake Information page: Here".  As a result, the Plaintiff conducted additional testing of the Defendants on the basis of familial status and religion.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

65.  The Plaintiff conducted a test of the Defendants on or about the 11th day of February, 2019 with regards to Heritage BYU Idaho Approved Housing.  In applying for an apartment, the Plaintiff's tester told the Defendant Halle that the tester is seeking an apartment for a family consisting of two adults and their four year old child.  The Defendant Halle told the Plaintiff's tester that the apartments at Heritage BYU Idaho Approved Housing are available only to single students attending Brigham Young University-Idaho and that families are not allowed by the Defendants to reside at said real property.  The Defendant Halle therefore denied housing to the Plaintiff's tester on the basis of familial status in violation of the FHA.

66.  The Plaintiff conducted another test of the Defendants on or about the 14th day of February, 2019 through on or about the 22nd day of February, 2019 with regards to Heritage BYU Idaho Approved Housing.  In applying for an apartment, the Plaintiff's tester inquired of the Defendant Halle whether there are any Jewish synagogues nearby and the Defendant Halle told the tester that she does not believe there are any in the area.  The Plaintiff's tester asked the Defendant Halle if the tester would be permitted to put a Jewish mezuzah (a small scroll case containing biblical passages that must be attached to the door post at the entrance to a Jewish home under Jewish law and tradition) at the front door.  The Defendant Halle said she was uncertain about how such a matter would be handled and discussed the issue with the owner and other property managers with regards to Heritage BYU Idaho Approved Housing.  After such discussion, the Defendant Halle told the Plaintiff's tester that if the roommates did not agree to putting the mezuzah at the front door, as a compromise the tester would need to put it at the tester's bedroom door.

67.  The following actions of the Defendants constitute violations of the FHA: (a) statements on the website maintained by the Defendants with regards to Heritage BYU Idaho

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

20

**KEN NAGY
Attorney at Law
Lewiston, Idaho**

Approved Housing which indicate a preference on the basis of religion; (b) denial of housing to families with minor children; and (c) requiring roommate approval before engaging in religious practice at the real property at issue.

68.   The Plaintiff has committed significant resources to investigating the actions of the Defendants with regards to its actions pertaining to the Heritage BYU Idaho Approved Housing and their treatment of the tenant at issue, which constitutes a diversion of the Plaintiff's resources.  The discriminatory actions of the Defendants have resulted in a frustration of the Plaintiff's mission.  The Plaintiff has therefore been damaged by the discriminatory actions of the Defendants.

69.   As a result of the violations of the FHA described above concerning the Heritage BYU Idaho Approved Housing and the damages that the Plaintiff has incurred as the direct result of the Defendants' actions in violation of the FHA, the Plaintiff has filed an administrative complaint with HUD on its own behalf.

COUNT ONE—DISCRIMINATION ON THE BASIS OF "HANDICAP" IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS

70.   The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-69 above.

71.   The Defendants have discriminated in the sale or rental of, and otherwise made unavailable and denied, a dwelling on the basis of "handicap".  42 U.S.C. §3604(f)(1).

72.   The Defendants have discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "handicap".  42 U.S.C. §3604(f)(2).

VERIFIED COMPLAINT AND                    21
DEMAND FOR JURY TRIAL

KEN NAGY
Attorney at Law
Lewiston, Idaho

73.  The Defendants have refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford equal opportunity to use and enjoy a dwelling.  42 U.S.C. §3604(f)(3)(B).

74.  The Defendants made, printed or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap".  42 U.S.C. §3604(c).

75.  Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the victims.

<u>COUNT TWO— DISCRIMINATION ON THE BASIS OF "FAMILIAL STATUS" IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS</u>

76.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-75 above.

77.  The Defendants have discriminated in the sale or rental of, and otherwise made unavailable and denied, a dwelling on the basis of "familial status".  42 U.S.C. §3604(a).

78.  The Defendants have discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "familial status".  42 U.S.C. §3604(b).

79.  The Defendants made, printed or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "familial status".  42 U.S.C. §3604(c).

80.  Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the victims.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

22

<u>COUNT THREE— DISCRIMINATION ON THE BASIS OF "RELIGION" IN
VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS</u>

81.  The Plaintiff realleges and herein incorporates by reference the allegations set forth

in Paragraphs 1-80 above.

82.  The Defendants have discriminated in the sale or rental of, and otherwise made

unavailable and denied, a dwelling on the basis of "religion".  42 U.S.C. §3604(a).

83.  The Defendants have discriminated in the terms, conditions and privileges of the sale

or rental of a dwelling, and the services and facilities in connection therewith, on the basis of

"religion".  42 U.S.C. §3604(b).

84.  The Defendants made, printed or published a notice or statement with respect to the

sale or rental of a dwelling that indicates a preference, limitation or discrimination based on

"religion".  42 U.S.C. §3604(c).

85.  Such conduct is willful and intentional, and exhibits reckless or callous indifference

for the rights of the victims.

<u>COUNT FOUR—INTERFERENCE, COERCION OR INTIMIDATION IN VIOLATION OF
THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS</u>

86.  The Plaintiff realleges and herein incorporates by reference the allegations set forth

in Paragraphs 1-85 above.

87.  The Defendants have engaged in interference in the exercise or enjoyment of rights

granted the victims by 42 U.S.C. §§3603 and 3604.  42 U.S.C. §3617.

88.  Such conduct is willful and intentional, and exhibits reckless or callous indifference

for the rights of the victims.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

COUNT FIVE—NEGLIGENCE

89.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-88 above.

90.  The Defendants owed a duty of care to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff.

91.  It could have been reasonably anticipated or foreseen by the Defendants that their failure to use reasonable care might result in injury to the Plaintiff.

92.  The Defendants were negligent in that they failed to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff by failing to adequately train and supervise its agents and employees with regards to the requirements of the Fair Housing Act, 42 U.S.C. §3601 et seq. and its implementing regulations.

DAMAGES

93.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-92 above.

94.  As the result of the actions and conduct of the Defendants, as described above, the Plaintiff has suffered significant and irreparable loss and injury.

95.  The Plaintiff is an "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and is an intended beneficiary of the protections and requirements of the statutes, laws and regulations referenced above.

96.  The Plaintiff has suffered actual damages as a result of its out-of-pocket expenses and past diversion of its resources, as described above and in the attached "Appendix A", in the amount of $77,965.96, which continue to accrue.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

24

97.  The Plaintiff has suffered actual damages as a result of the frustration of its mission, as described above and in the attached "Appendix A", in the amount of $40,781.95.

98.  In addition to the injuries suffered by the Plaintiff, it is believed the Defendants have also caused significant and irreparable loss and injury to other as-of-yet unidentified victims.

99.  The Plaintiff and the as-of-yet unidentified victims are "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and are intended beneficiaries of the protections and requirements of the statutes, laws and regulations referenced above.

100.  All victims of the Defendants' actions and conduct should be identified and compensated through a Victims' Compensation Fund.

101.  A Victims' Compensation Fund should be established in an amount to be determined at trial to adequately compensate as-of-yet unidentified victims of the Defendants' discriminatory conduct, as described in the attached "Appendix B", from which such victims should be compensated.  Said Victims' Compensation Fund should be established and administered as follows:

    a.  The Plaintiff shall be assigned the task of managing and administering the Victims' Compensation Fund.  The Plaintiff shall be compensated for all time spent administering said Fund at the rate of $75 per hour. The Plaintiff shall keep detailed records of all tasks engaged in and shall submit copies of said records to the Court and the Defendants on a monthly basis.

    b.  Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Defendants shall deposit in an interest-bearing escrow account the total sum as determined by applying the calculation set forth in the attached Appendix B.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

KEN NAGY
**Attorney at Law**
**Lewiston, Idaho**

c.  Any interest accruing to such Victims' Compensation Fund shall become a part of the fund and be utilized as set forth herein.

d.  Within fifteen (15) days after the Defendants deposit funds in the Victims' Compensation Fund, the Plaintiff shall publish a Notice to Potential Victims of Housing Discrimination (hereinafter "Notice") in at least five daily newspapers serving the main population centers of the State of Idaho informing readers of the availability of compensatory funds.  The form and content of the Notice shall be approved by the Court at the time of the entry of the Court's order establishing the Victims' Compensation Fund.  The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in each newspaper.  The publication dates shall be separated from one another by at least 21 days, and at least two of the publication dates shall be a Sunday. The Plaintiff shall send a copy of the Notice prior to each and every publication date to each of the following organizations: (1) Living Independent Network Corp. (LINC), 1878 Overland Road, Boise, Idaho 83705; (2) DisAbility Rights Idaho, 4477 Emerald Street, Suite B-100, Boise, Idaho 83706; Disability Action Center, 505 North Main Street, Moscow, Idaho 83843; and (3) Living Independently for Everyone (LIFE), P.O. Box 4185, 640 Pershing Avenue, Suite 7, Pocatello, Idaho 83201.  (4) Living Independently for Everyone (LIFE), 250 S. Skyline Suite 1 Idaho Falls, 83402

e.  Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Plaintiff shall send by first-class mail,

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

26

postage prepaid, a copy of the Notice to each tenant who currently resides or who resided at any time at the subject property.

f.   Nothing in this section shall preclude the Plaintiff from making its own additional efforts at its own expense to locate and provide notice to potentially aggrieved persons.

g.   Allegedly aggrieved persons shall have one hundred-twenty (120) days from the date of the entry of an order by this Court creating a Victims' Compensation Fund to contact the Plaintiff in response to the Notice.  The Plaintiff shall investigate the claims of allegedly aggrieved persons and, within one hundred-eighty (180) days from the entry of an order by this Court creating a Victims' Compensation Fund, shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to each such persons.  The Plaintiff will inform the Defendants in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim.  The Defendants shall have fourteen (14) days to review the declaration and to provide to the Plaintiff any documents or information that it believes may refute the claim.

h.   After receiving the Defendants' refutation, if any, the Plaintiff shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by the Defendants. When the Court issues an order approving or changing the Plaintiff's proposed distribution of funds for aggrieved persons, the Defendants shall, within ten

VERIFIED COMPLAINT AND                    27
DEMAND FOR JURY TRIAL

(10) days of the Court's order, deliver to the Plaintiff checks payable to the aggrieved persons in the amounts approved by the Court. In no event shall the aggregate of all such checks exceed the sum of the Victims' Compensation Fund, including accrued interest and after deducting compensation to the Plaintiff as described above. No aggrieved persons shall be paid until he or she has executed and delivered to counsel for the Plaintiff a signed and notarized statement releasing the Defendants from all claims related to the subject property.

i.  In the event that less than the total amount in the fund including interest is distributed to aggrieved persons, the remaining funds shall be submitted to an education fund to be drawn upon by the Plaintiff and other non-profit organizations for purposes of educating housing consumers and providers on the requirements of the Fair Housing Act. Said education fund shall be administered by the Plaintiff.

j.  The Defendants shall permit the Plaintiff, upon reasonable notice, to review any records that may facilitate its determinations regarding the claims of allegedly aggrieved persons.

102.  The Court should award to the Plaintiff and against the Defendants punitive damages due to the intentional and willful nature of the Defendants' conduct in an amount to be determined at trial.

103.  The Court should enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

28

104.  The Court should award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action, as provided for by the FHA and court rule.

105.  The Defendants should be held jointly and severally liable for any and all damages, including an award of attorney's fees and costs, awarded in this proceeding.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff Intermountain Fair Housing Council, Inc. prays that the Court enter judgment against the Defendants as follows:

A.  That the Court find and declare that the actions of the Defendants constitute violations of the Fair Housing Act;

B.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for its out-of-pocket expenses and past diversion of resources in the amount of $77,965.96, which continue to accrue;

C.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the frustration of the Plaintiff's mission in the amount of $40,781.95.

D.  That the Court enter an order establishing a Victims' Compensation Fund an amount to be determined at trial by applying the calculation set forth in the attached Appendix B and to be administered according to the terms set forth in Paragraph 101 above;

E.  That the Court award to the Plaintiff and against the Defendants punitive damages due to the reckless or callous nature of the Defendant's conduct in an amount to be determined at trial;

F.  That the Court enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

29

refusing to comply with all requirements of the Fair Housing Act and its implementing regulations;

G.  That the Court award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action;

H.  That the Defendants be held jointly and severally liable for any and all damages, including an award of attorneys fees and costs, awarded in this proceeding; and

I.  That the Court order any further and additional relief as the interests of justice may require.

<u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury on all issues.

DATED this __30th__ day of __April_____, 2019.

_____/s/_____

KEN NAGY
Attorney for Plaintiff

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

30

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

ZOE ANN OLSON, being first duly sworn on her oath, deposes and says:

I am the Executive Director of the Intermountain Fair Housing Council, Inc., the Plaintiff herein, that I have read the foregoing document, know well the contents thereof, and that the facts therein stated are true to the best of my knowledge and belief.

_____/s/_____
ZOE ANN OLSON

STATE OF I D A H O  )
                    : ss
County of __Ada__  )

I, ___Alison E. Brace_____, a Notary Public for said state, does hereby certify that on the __10th__ day of ___April_____, 2019, personally appeared before me ZOE ANN OLSON, Executive Director of the Intermountain Fair Housing Council, Inc. who, being by me first duly sworn, declared that she signed the foregoing document as such, and that the statements therein contained are true and accurate as she verily believes.

      SEAL
   Alison E. Brace          ___/s/ (Alison E. Brace)___
    Notary Public           Notary Public in and for the State of __Idaho__
  Comm. No. 46674           Residing at: __Ada County_____
   State of Idaho           My commission expires: __3/12/24_____

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

## APPENDIX A:

## PLAINTIFF IFHC'S MEMORANDUM OF DAMAGES

The Plaintiff IFHC has identified four categories of damages that it has suffered as the result of the Defendants' failure to comply with the FHA.  These categories are: (1) Past Diversion of Resources; (2) Lost Economic Opportunity; and (3) Frustration of Mission.  Each of these categories of damages have been recognized and awarded by various courts to organizational plaintiffs in previous fair housing cases.[1]

The following represents an itemization of the Plaintiff IFHC's damages:

## 1.  Out-of-Pocket Expenses and Past Diversion of Resources

The Plaintiff IFHC has diverted its resources and has been deferred from engaging in certain actions as a result of the Defendants' discriminatory actions.  The Plaintiff IFHC has

---

[1] *See, Southern Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138 (Cent. Dist. Cal. 2007) (fair housing organization awarded $6,590.80 for diversion of resources and $29,065.32 for frustration of mission), *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (fair housing organization awarded $14,217.00 for the diversion of resources); *HUD v. Perland*, Fair Housing-Fair Lending Rptr. ¶25,136 (HUD ALJ 1998) (fair housing organization awarded $4,516 for the diversion of resources and $1,400 for the costs of future monitoring of the defendants); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F.Supp. 1213, *aff'd in pertinent part*, 908 F.3d 898 (2nd Cir. 1993) (fair housing organization awarded $20,000 for the diversion of resources); *HUD v. Jancik*, Fair Housing-Fair Lending Rptr. ¶25,058 (HUD ALJ 1993) (fair housing organization awarded $13,386 for the diversion of past and future resources and $9,000 for the financial opportunity lost as a result of the investigation and litigation of the case); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) (fair housing organization awarded $16,500 for out-of-pocket expenses and costs of future monitoring and training); *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D. Va. 1987) (fair housing organization awarded $2,300 for the diversion of resources and $10,000 for the frustration of its equal housing mission).

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

32

sponsored training workshops in the Defendants' geographic area, and has engaged in site monitoring, investigation, complaint preparation, counseling and other activities with regards to this matter.  Furthermore, the Plaintiff IFHC has been deferred from undertaking or completing numerous activities, including conducting fair housing training of housing providers, enforcement activities that could not be undertaken, conducting a community building campaign, training community organizations, and training the legal community.  As a result, it has incurred expenses as follows:

    a.   Pre-litigation Staff Time Expenses:              $24,869.00

    b.   Testing/Investigation/Direct Costs:            $4,079.52

    c.   Educational Costs:                            $24,148.44

    d.   <u>Cost of Deferred Actions:                          $24,869.00</u>

                        Total Past Diversion of Resources:   $77,965.96

Further litigation of these matters will result in an increase in the Plaintiff IFHC's diversion of resources, as well as other damages.

## 2.  Frustration of Mission

The Plaintiff IFHC's mission is to ensure open and inclusive housing for all people, and to advance equal access to housing for all persons without regard to race, color, sex, religion, national origin, familial status, sexual orientation, gender identity, source of income, or disability.

The Plaintiff IFHC has determined that it will be necessary to monitor the Defendants' compliance with the FHA and to educate housing consumers and providers regarding fair housing requirements in order to counteract the effects of the Defendants' failure to comply with

the FHA.  The Plaintiff IFHC shall engage in actions to redress the frustration of its mission and it expects to incur the following expenses as a result:

a.  Advertising Costs: $4,012.50

b. Cost of Fair Housing Trainings: $33,516.65

c. Costs of Monitoring/Testing: $3,252.80

Total Frustration of Mission Damages: $40,781.95

## **TOTAL DAMAGES**

The Plaintiff IFHC calculates its total damages in this proceeding as follows:

1.  Out-of-Pocket Expenses and Past Diversion of Resources: $77,965.96

2.  Frustration of Mission: $40,781.95

Total Damages: $118,747.91

**APPENDIX B:**

**CALCULATION OF VICTIMS' COMPENSATION FUND**

**I.  INTRODUCTION**

In addition to the damages incurred by the Plaintiff, it is believed that other as-of-yet unidentified victims have also suffered damages as the result of the Defendants' discriminatory actions.  In furtherance of the Plaintiff IFHC's mission, a Victims' Compensation Fund should be created in order to identify and obtain adequate compensation for such victims.

The Federal District Court for the District of Idaho has frequently ordered the establishment of a Victims' Compensation Fund in previous actions brought pursuant to the Fair Housing Act.  *See, United States of America and Intermountain Fair Housing Council v. Stealth Investment, LLC, et al.*, Case No. CV 07-500-E-EJL (Consent Decree entered May 29, 2008 establishing Victims' Compensation Fund in the amount of $12,500.00); *United States of America v. Taigen & Sons, Inc., et al.*, Case No. CV 01-337-N-EJL (Consent Order entered July 18, 2006 establishing Victims' Compensation Fund in the amount of $55,000.00); *United States of America v. Thomas Development Co., et al.*, Case No. CV 02-68-C-EJL (Consent Order entered March 11, 2005 establishing Victims' Compensation Fund in the amount of $100,000.00); *United States of America v. S-Sixteen Ltd. Partnership*, Case No. CV 03-154-S-BLW (Consent Order entered March 14, 2005 establishing Victims' Compensation Fund in the amount of $40,000.00); *United States of America v. Pacific Northwest Electric, Inc., et al.*, Case

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

No. Civil No. 01-19-S-BLW (Consent Decree entered October 21, 2003 establishing Victims' Compensation Fund in the amount of $29,000.00); *United States of America v. Virginia L. Vanderpool, et al.*, Case No. CIV 01-78-S-BLW (Consent Order entered April 27, 2002 establishing Victims' Compensation Fund in the amount of $30,000.00); *United States of America, et al., v. Duane B. Hagadone, et al.*, Case No. CV 97-603-N-RHW (Consent Order entered July 6, 1999 establishing Victims' Compensation Fund in the amount of $30,000.00).

Said orders, however, do not contain a description of how the amount of such a fund was calculated. The Victims' Compensation Fund that should be ordered herein should be calculated according to the underlying principles and using the applicable figures set forth below.

## II.  UNDERLYING PRINCIPLES

A.  The number of units that are owned and managed by the Defendants is currently unknown.

B.  The number of months that the Defendants have managed property that is subject to the requirements of the Fair Housing Act, as of the filing of this complaint, is currently unknown.

C.  On average, each of the units at issue can be expected to be rented to a new tenant who is a member of one of the protected status at issue every twelve months.

D.  The U.S. Census Bureau's 2013 American Community Survey indicates that, for the state of Idaho, persons with a disability comprised 13.2% of the population.

E.  The amount of damages awarded to victims of discrimination in violation of the Fair Housing Act in administrative proceedings before the United States Department of Housing and Urban Development has been $10,000.00 or more (this is a conservative estimate of the amount of damages that should be awarded to a victim of such discrimination, and is therefore not

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

intended in any way to be a statement of the damages that are reasonably owing to individual victims, which instead must be determined on a case by case basis with full consideration of the facts of each such case).

F.  The Plaintiff IFHC is the organization best equipped and situated to administer the fund.

G.  The Plaintiff IFHC should be compensated at its hourly overhead rate of $75.00 per hour in the administration of the fund.

H.  The number of hours that it will take to administer the fund and complete compensation of victims can reasonably be expected to be three hours per identified victim.

I.  Administration of the fund will result in the incursion of out-of-pocket expenses, such as advertising and travel costs, in the amount of at least $100.00 per identified victim.

### III.  CALCULATION OF AMOUNT OF VICTIMS' COMPENSATION FUND

The total amount of the Victims' Compensation Fund should be calculated as follows:

a.  Step One.  The amount of funds that can reasonably be expected to be necessary to compensate identified victims should be calculated as follows: the total number of units at the subject property **times** the total number of months that said units have been subjected to the FHA **divided by** twelve (to determine the number of prospective renters who have encountered discrimination at the subject property) **times** $10,000.00.

b.  Step Two.  The amount of funds that can reasonably be expected to be necessary incurred by the fund administrator for work performed in administering the fund should be calculated as follows: the total number of units at the subject property **times** the total number of months that said units have been subjected to the FHA **divided by** twelve (to determine the

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

37

number of prospective renters who have encountered discrimination at the subject property) **times** three (hours necessary to administer fund per victim) **times** $75.00 per hour.

c. <u>Step Three.</u>  The amount of funds that can reasonably be expected to be necessarily incurred by the fund administrator for out-of-pocket expenses in administering the fund should be calculated as follows: the total number of units at the subject property **times** the total number of months that said units have been subjected to the FHA **divided by** twelve (to determine the number of prospective renters who have encountered discrimination at the subject property) **times** $100.00.

d. <u>Step Four.</u>  The total amount of the Victims' Compensation Fund is the amount determined by adding the results of Step One, Step Two and Step Three.

The formula described above can be expressed as follows:

$$\frac{(\text{number of units } \mathbf{X} \text{ number of months rented}) \; \mathbf{X} \; \$10,000.00}{12}$$

$$+ \; \frac{(\text{number of units } \mathbf{X} \text{ number of months rented}) \; \mathbf{X} \; 3 \; \mathbf{X} \; \$75.00}{12}$$

$$+ \; \frac{(\text{number of units } \mathbf{X} \text{ number of months rented}) \; \mathbf{X} \; \$100.00}{12} = \text{amount of fund}$$

**3.  Calculation of Victims' Compensation Fund**

Applying the underlying principles, as described above, and the applicable figures, as set forth above, the victims' compensation fund should be established in an amount to be determined at trial once the number of units at the Subject Property and the number of months said units have been rented is determined in order to compensate identified victims.

VERIFIED COMPLAINT AND                    38
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**